STEVENS *v.* WEST SIDE HARDWARE STORE, INCORPORATED.

[No. 14,731. Filed April 7, 1934. Rehearing denied June 28, 1934.]

*Walter R. Arnold* and *Thad M. Talcott, Jr.*, for appellant.

*McInerny, McInerny & Huguenard*, for appellee.

SMITH, J.—Appellant brought this action upon three negotiable promissory notes by a complaint in one paragraph which alleged that appellee executed unto Brenard Manufacturing Co. the promissory notes sued upon; that, prior to maturity of said notes, they were purchased by appellant from the payee, Brenard Manufacturing Company, and were indorsed by payee to appellant by written indorsement thereon; that they are due and payable and wholly unpaid; judgment was demanded for principal, interest, and attorney fees therefor. Appellee filed its answer in two paragraphs:

(1) A verified plea of *non est factum;* (2) that said notes were secured through fraud.

A reply in general denial was filed by appellant to the second paragraph of answer, which closed the issues.

The cause was submitted to the court and a jury for trial. At the close of appellant's evidence, the court sustained a motion by appellee to direct a verdict for it. A verdict was returned for appellee as directed, and judgment rendered against appellant for costs.

Appellant seasonably filed his motion for a new trial, which was overruled, this action of the court being the only error assigned for reversal. The motion for new trial contains two grounds, but only one is presented by appellant in his brief; namely, the court erred in sustaining the objection of the appellee to the introduction in evidence of each of appellant's exhibits 1, 2, and 3, being the notes sued upon.

Appellant called as his only witness Frank Nowak, manager of appellee company, and, after some questions and answers relative to said Nowak's authority to execute the promissory notes sued upon, appellant offered each of said notes, exhibits 1, 2, and 3, in evidence, to which offer appellee made the following objection to the admission of each of said exhibits, "The defendant separately objects for the reason that unless it is first shown that these exhibits were authorized by the defendant, they cannot be binding in any way upon the defendant."

The court sustained the objection of the appellee, and excluded the exhibits. The only question presented for decision is, Does the evidence make a prima facie showing that Frank Nowak, as manager, has authority to bind the appellee by his execution of said notes?

After the exclusion of the notes, appellant took proper exceptions and rested his case. Thereupon, the

court, upon appellee's motion, directed the jury to return a verdict for appellee.

Appellee questions the preparation of appellant's brief, saying it is mimeographed and single-spaced, which does not comply with rule 25, and suggests that this appeal ought to be dismissed on account of the failure of appellant to comply with said rule in not double-spacing the same. Rule 25 in force when this case was briefed requires that "all briefs shall be printed or typewritten in a workmanlike manner;" then follow specifications as to paper, thickness, etc. It further provides, "If typewritten, the lines shall be double-spaced." The brief of appellant is mimeographed, and is in compliance with said rule 25. Appellee cites the case of *Rhoades* v. *Studebaker* (1933), 97 Ind. App. 547, 182 N. E. 543, decided by this court October 6, 1932. That case does not support appellee's contention, for it applies only to typewritten briefs. It does not hold as appellee contends, that a mimegraphed brief when single-spaced is not in compliance with the rule. Therefore, appellee's position is not well-taken, and appellant's brief complies with the rule of this court. While the language employed here on the subject of single-spaced, mimeographed briefs is not in conflict with the *Rhoades case, supra,* that part of the opinion in the *Rhoades case, supra,* which states that this court will not read such briefs, referred to therein, is hereby modified. This court will examine all briefs, and consider them, if legible, to the end that the case may be considered on its merits, if possible. While the court may, if typewritten briefs do not comply with the rule as to being doublespaced, disregard them, it may also in its discretion require them to be rewritten and double-spaced in order to comply with the rule, under such terms and conditions as it may deem best. We expect, however, that counsel will co-operate to the end

that all briefs comply with the rules, and be so prepared that they may be read easily, and without possibility of confusion in determining what is stated therein.

The only question being as to the authority of Frank Nowak to execute the notes in the suit, we deem it advisable to set out the substance of the testimony of Frank Nowak, the witness on behalf of appellant, upon the subject of his authority to execute the notes in suit, which was all the evidence presented upon that subject.

Mr. Nowak testified that he lives in South Bend, Indiana, and has been in the hardware business since 1917 continuously up to the time of his testifying, and employed by the "West Side Hardware company" (which is the appellee in this case) ; that when he started in with the company, he was its manager, and has continued to occupy that position all the "way through," and is still manager of its affairs; that in the conduct of its affairs, he placed the orders for, and bought the goods for the store, and employed and discharged the employees therefor; that there was no one else in the store besides himself who did any buying or selling; that he attended to the payment of the bills by designating what bills should be paid, and turning them over to the treasurer to sign, and issue checks therefor; that he did not sign any checks, nor did he countersign them; that he would arrange for the goods, and turn over the bills to the treasurer to be paid, and the treasurer relied upon his information as to what the obligations of the corporation were; that this arrangement has been the same over a period of years; that he signed the notes, exhibits 1, 2, and 3, by putting on the stamp "West Side Hardware Store, Inc.," and signed his name as "Mgr.," and handed them to Mr. Pierce, who was negotiating with him for the purchase

of some radios to be handled by the store; that the store had never dealt in radios before, and they constituted a new line of goods therein; that he does not remember the number of radios that were negotiated.

It will be noted also that the evidence shows that he did not execute any checks on behalf of appellee in payment of bills or accounts, but that the treasurer of the corporation did this, and had the only authority to do so. There is no evidence that Mr. Nowak as manager of this store had ever executed any negotiable instruments of any kind prior to this on behalf of appellee, or that he had any express authority so to do; or any express authority to execute the notes in suit. There is no showing of any implied authority unless this authority could be said to be implied from his acts, conduct, and powers in managing the store.

Objection was made to the introduction of the notes without first showing the authority of the signer thereof to execute them, and bind the appellee. The first impression might be that the notes themselves were competent, and that the objection made to their introducion went only to the weight and not the competency thereof.

In the case of *W. A. Flint Company et al.* v. *John V. Farwell Company* (1922), 192 Ind. 439, 134 N. E. 664, 136 N. E. 839, the question was considered as to the admission of a certain mortgage executed by the president and secretary of the appellant corporation. This mortgage had been signed by the president and secretary, and the president testified that he was the president of the corporation, and that he had signed the mortgage for the company in his capacity as president of the company. The lower court admitted the mortgage in evidence. The Supreme Court, in speaking of this proposition, said:

"Therefore it was error to admit it until evidence was first introduced sufficient to show, prima facie at least, that it was executed by the company. Obviously the evidence above set out was insufficient for that purpose. The mere fact that the witness was president of the company did not prove that he was authorized to execute, in its name, a mortgage on the company's real estate."

The Supreme Court cited to this proposition *Elkhart Hydraulic Co.* v. *Turner* (1908), 170 Ind. 455, 459, 84 N. E. 812. The evidence in the instant case as to the authority for the execution of the notes went further than in the Flint case, *supra;* however, the question of the competency of exhibits 1, 2, and 3, which were excluded, hinges upon the proposition as to whether the evidence made a prima facie showing that Mr. Nowak had authority to execute these notes, and thereby bind the appellee.

We have set out what we think is a complete statement of all the testimony offered by appellant upon the subject of Mr. Nowak's authority to execute the notes in suit. Where the execution of a note has been denied under oath as in this case, before it can be introduced in evidence, there must be some evidence tending to prove its formal execution, and in this case this would include a prima facie showing that Mr. Nowak had authority to execute these notes on behalf of appellee. Upon this subject, our Supreme Court has said:

"We understand the rule to be, that, where the execution of a note or other similar instrument in writing, sued on, is denied under oath, and no evidence of the authenticity of such note or other instrument is given, it can not be read to the jury, but that, where evidence addressed to the court is adduced, making out a prima facie case of the authenticity of such note or other instrument, or reasonably tending even slightly, to prove the formal execution of it, such evidence is sufficient to entitle such note or other instrument to go to the

jury. 2 Greenl. Ev., sec. 294; 2 Phil. Ev., 5th Am. ed., p. 502, top page, 423; *Carter* v. *Pomeroy*, 30 Ind. 438." *Pate et al.* v. *The First National Bank of Aurora* (1878), 63 Ind. 254, 259.

This ruling has been followed by our own court in the case of *Talbott, Administrator* v. *Hedge* (1892), 5 Ind. App. 555, 556, 32 N. E. 788.

The question whether the notes in suit are admissible in evidence is for the trial court to determine.

The appellant says that, it having been shown that Nowak at the time of the execution of the notes had "general supervision" of the affairs of the corporation, and was subordinate to none except the board of directors, and execution and delivery by him having been shown, the corporation was presumptively bound by his act in executing the notes, and it was error to exclude them. The difficulty with appellant's proposition in the first place is that it is not shown that Mr. Nowak had "general supervision" over the affairs of the corporation unless such fact could be said to be inferred from the evidence introduced, and as above stated. We do not think that such an inference could be drawn from the facts, that he was the "manager," and had power to buy and sell goods in the ordinary course of the hardware business, and to hire and discharge employees. Appellant is in error also when he infers that the notes were delivered to the payee. Although the evidence was that the notes were delivered to a Mr. Pierce, there is no evidence showing just whom Mr. Pierce represented, or that he represented the payee.

It must be borne in mind that this action involves the conduct of a *manager* of a store, which is owned by a corporation, in the execution of negotiable promissory notes; and also that this manager was attempting to purchase a line of goods which

had not previously been handled by appellee, and was outside of its general line. The evidence affirmatively shows that Mr. Nowak did not have authority to execute checks for the final payment of goods purchased, or for any other purpose. The issuing of the notes in payment for the goods purchased would constitute a payment therefor. The authority for the issuing of checks for payment of goods was in another. As he did not have authority to issue checks for the payment of the goods, it could hardly be contended that the appellee corporation intended that he should have authority to issue negotiable promissory notes in payment for goods purchased. In applying the principle of binding the corporation by the act of its agent, a more strict rule is applicable where the act is an attempt by the agent to bind its principal by the issuing of negotiable promissory notes, than in simple purchases by contract of merchandise to be used in the usual course of business. It is also to be borne in mind that this was the first instance in which this manager of appellee had issued any promissory notes and there is no showing that he had any express authority from the directors to execute the notes in suit, or promissory notes generally; so, in order to bind his corporation, the appellee, such authority, if any, must be implied from his acts, conduct, and powers as shown by the evidence herein.

In 2 Corpus Juris 636, section 280, under the heading "Power of Agent to Execute Negotiable Instruments," this principle is announced:

"Commercial paper, such as bills, notes, and checks, passes current to a limited extent like money, and accordingly power to an agent to execute or indorse it is to be strictly limited, and will never be lightly inferred, but ordinarily must be conferred expressly. The most comprehensive grant, in general terms, of power to an agent conveys no power to subject the principal to liability upon such paper unless the exercise of such is so

necessary to the accomplishment of the agency that such intent of the principal must be presumed in order to make the power effectual. Thus such power is ordinarily not to be inferred from authority to adjust all the principal's accounts and concerns as he could do in person, or to exchange, buy, sell, collect, or loan for the principal, or to collect debts and execute deeds, or from a general authority to manage a business, unless such authority is necessarily implied from the peculiar circumstances of the particular case, and is indispensable to the proper execution of the authority granted."

In the same volume at page 644, section 288, under the heading of "Limits of Authority," the proposition is discussed as to the limitation upon an agent's authority, and his implied power, and, in speaking of the power of a *general agent* for the management of the business for the principal, the author says:

"Nor has such an agent implied power, unless it is necessary to the performance of his agency, to purchase property, to borrow money, to execute or indorse negotiable instruments, to engage his principal in new and different enterprises."

21 Ruling Case Law 870, section 45, under the topic of "Principal and Agent," lays down the rule as follows:

"An agent having general authority to manage his principal's business has by virtue of his employment no implied authority to bind his principal by making, accepting, or indorsing negotiable paper."

This authority cites the case of *Jackson Paper Manufacturing Company* v. *Commercial National Bank* (1902), 199 Ill. 151, 65 N. E. 136, 139, which, along with other cases cited, supports the text above quoted, and, quoting from the opinion, the court says:

"An agent having general authority to manage his principal's business has, by virtue of his employment, no implied authority to bind his principal by making, accepting, or indorsing negotiable paper. Such an authority must be expressly con-

ferred, or be necessarily implied from the peculiar circumstances of each case. It may undoubtedly be conferred and by implication, but it will not be presumed from the mere appointment as general agent."

The following authorities from other jurisdictions also support this proposition: *Elwell* v. *Puget Sound & C. R. Company* (1893), 7 Wash. 487, 35 Pac. 376; *Helena National Bank* v. *Rocky Mountain Tel. Co.* (1898), 20 Mont. 379, 51 Pac. 829; *The New York Iron Mine* v. *The First National Bank of Negaunee* (1878), 39 Mich. 644; 3 Thompson on Corporations, Third Edition, Section 1700.

In all of the authorities, the underlying principle seems to be that, for the agent to bind his principal on the execution of a negotiable promissory note, he must either have express authority to do so, or he must have been apparently clothed with such authority by the corporation.

Appellant earnestly insists that the evidence introduced shows an apparent authority in the manager, Mr. Nowak, to execute the notes in suit; and contends that the notes should have been introduced in evidence, since a prima facie showing of authority to execute the same was made, and that the burden was then upon the appellee to show that Mr. Nowak acted outside of his authority. One of the cases cited by appellant upon this proposition is *Baum* v. *Nord et al.* (1928), 88 Ind. App. 674, 164 N. E. 294. That case involved the authority of the president, Morton Hawkins, to bind a Welfare Loan Society upon a contract for the payment of a note in which the president agreed to accept certain stocks in payment of the note from the payor. In that case, no plea of *non est factum* was filed, and, further, the question of execution of the contract was not involved; in fact, it was an oral contract. The court said, on page 681:

"But, when the president acts within the apparent scope of his authority and within the scope of the usual duties which he performs, it will be presumed that he acted with authority, and anyone who would contend to the contrary has the burden of proof that he did not so act."

Some cases of the Supreme Court of this state are cited to this proposition, but they do not go as far as appellee would have us go in this case; furthermore, no plea of *non est factum* was filed in any of these cases.

We have examined all of the cases cited by appellant, but none of them support appellant's contention, as he urges in this case. The case of *Indiana Fibre Products Company* v. *Cyclone Manufacturing Company* (1924), 81 Ind. App. 682, 143 N. E. 169, cited by appellant, involved the question of a superintendent of a factory who had charge of the factory business, and had been in the habit of collecting accounts and selling goods. This superintendent sold some goods, and received a check in payment therefor, and indorsed it, and cashed it, and converted the proceeds to his own use. It developed in the evidence that he had transacted the business, sold the goods, and was authorized to make collections. The court held under the facts in that case that the corporation, clothing him with this apparent authority, was bound by his indorsement of the check.

Appellant also cites the case of *The National State Bank of Terre Haute* v. *Vigo County National Bank et al.* (1895), 141 Ind. 352, 40 N. E. 799. This case does not sustain appellant's position under the facts in the case at bar. The suit was brought to cancel some mortgages given by a corporation, which were executed by its president, and a demurrer was sustained to the complaint; hence, the question of burden of proof was not involved. To like effect is the case of *The Evansville Public Hall Co.* v. *Bank of Commerce* (1896), 144 Ind. 34, 42 N. E. 1097. Here, the president of the corporation had executed a note to the bank for an overdraft.

The corporation had been engaged in the construction of a building about which all of the officers and directors knew, and when the final settlement arrived, $3,700 was needed to finish paying for the building. The president of the corporation executed the note to cover the overdraft for this amount. No plea of *non est factum* was filed. Under the facts as presented, the court held that the corporation was bound by the act of its president, not upon the theory that he was simply the president of the corporation, but rather that he had acted with the consent of the directors of the corporation, who had knowledge of these overdrafts, and had been held out by them in the general course of the business as being the agent of the corporation with such authority; and that under these circumstances the corporation was bound. In nearly all of the cases cited by appellant from other states the question of the execution of a promissory note was not involved, and from an examination of the same, we do not think they support appellant's contention.

The appellee having filed a plea of *non est factum* challenging the execution of the notes in suit, it was incumbent upon appellant to make a prima facie showing of the due execution of the notes, which included the authority of the manager Nowak to sign them and bind appellee before they were admissible in evidence. While this is primarily a question of fact, still it becomes a question of law for the court to determine from the evidence as introduced whether such showing has been made before said notes are competent evidence under the issues as formed.

No such showing having been made, the lower court did not err in refusing to admit them in evidence, and the motion for new trial was properly overruled.

Judgment affirmed.

Kime, J., concurs in result.